UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| SAMMI SCARBROUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-CV-152 |
| | ) | (JORDAN/SHIRLEY) |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Brief in Support [Docs. 15 and 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 and 18]. Plaintiff Sammi Scarbrough ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner").

On July 10, 2009, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability, which began on October 10, 2008. [Tr. 106-13]. After her application was initially denied and denied again upon reconsideration, the Plaintiff requested a hearing. [Tr. 58]. On September 7, 2010, a hearing was held before an ALJ to review the Plaintiff's claim. [Tr. 26-41]. On September 29, 2010, the ALJ found that the Plaintiff was not disabled. [Tr. 9-22]. The Appeals Council denied

1

the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since October 10, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: History of remote spinal surgeries; depressive disorder; not otherwise specified and borderline personality (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is precluded from more than occasional climbing of stairs and ramps, bending from the waist to the floor, or stooping; is precluded from any climbing of ladders, ramps, and scaffolds, and crawling; would need a sit/stand option that would allow her to change positions from sitting, standing, or walking at least every hour. Mentally, she can perform only simple, non-detailed tasks; contact with coworkers and the public must be casual and infrequent; supervision must be direct and non-confrontational; and workplace changes infrequent and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 31, 1964[,] and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-20].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined

3

to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. 405(g). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.     POSITIONS OF THE PARTIES**

The Plaintiff presents one objection to the ALJ's decision. She argues that the ALJ gave great weight to Dr. Kenney's opinion, but the residual functional capacity determination is inconsistent with his opinion. [Doc. 16 at 7]. She argues that Dr. Kenney's findings equate to marked limitations in several areas, which the vocational expert testified would preclude her from working. [Id.]

6

The Commissioner responds that Dr. Kenney's opinion is consistent with the residual functional capacity determination and that the Plaintiff's argument that "moderate-to-marked limitations" equates "marked" limitations is incorrect. [Doc. 18 at 9].

V.      ANALYSIS

The Court will briefly discuss Dr. Kenney's opinion, and then analyze the Plaintiff's argument.

William J. Kenney, Ph.D., examined the Plaintiff on October 8, 2009. [Tr. 284-87]. Dr. Kenney noted that the Plaintiff has never had any mental health treatment nor has she attempted to hurt herself. [Tr. 285]. The Plaintiff stated that she has little work history because she suffers from back problems. [Tr. 285]. The Plaintiff stated that she had problems organizing her thoughts and that she is an aggressive person but not violent. [Tr. 285]. Dr. Kenney noted that the Plaintiff smoked several packs of cigarettes a day and that she had major issues with fire. [Tr. 285]. For example, the Plaintiff stated that when she was eight years old, she set her house on fire and blamed it on her baby-sitter because the Plaintiff was mad at her baby-sitter. [Tr. 285]. When she was thirteen years old, she poured motor oil on a cow and set it on fire. [Tr. 285]. In addition, fifteen years ago, she tried to burn another woman's house down. [Tr. 285]. Dr. Kenney reported that the Plaintiff "described herself as maintaining a somewhat minimal level of independence, adaptability, sustainability, and effectiveness." [Tr. 286]. She dresses and bathes everyday but does minimal chores around the house because of her back problems. [Tr. 286]. The Plaintiff's memory was fair, and she knew her social security number, date of birth, age, address, zip code, and telephone number. [Tr. 286]. She also knew her children's birth dates and

the current and past president. [Tr. 286]. She was oriented but had trouble reciting serial 7s and 3s. [Tr. 286]. Dr. Kenney also noted:

> Affect was on the restricted side. She did have some shaking in her hands. When asked about obsession or compulsions, [she] said she has this issue with the dishes. Dirty dishes are supposed to go on a certain side of the sink. If the dirty dish goes on the other side of the sink[,] she does not wash it. She will throw the dish away. This is something she feels comp[elled] to do and has been doing [for] a long time. She is not really sure why she started this habit. She denied any issues with hallucinations, delusions, or hearing voices. Sometimes, she gets a little paranoid in public, [and she] think[s] people look at her or stare at her. She has had a lot of jealousy issues over the years[,] even in her relationships[,] and has always been insecure and dependent on men. She used to think that she could not survive without a man, although she has been changing that opinion in the last few years[,] and she likes to keep things dark. She tries to blot out the light in her home[,] and [she] keep[s] the windows covered so it stays dark[,] particularly in her room. She said it [is] very hard to sleep[,] even if there is any light. She has put . . . tape over the light on the smoke detectors because that even bothers her at night if she can see it[,] and she mentioned in the morning[,] if a slight bit of sunlight gets into her room[,] she wakes up and can't go back to sleep.

[Tr. 286]. Dr. Kenney also noted that the Plaintiff is easily agitated, has low energy, and she feels worthless. [Tr. 287]. The Plaintiff reported that she has crying spells almost every day. [Tr. 287]. Dr. Kenney opined that she may have "frustration attacks" and that she suffers long-term issues with depression. [Tr. 287]. He also noticed that her gait was somewhat slow and awkward. [Tr. 287]. Dr. Kenney opined that the Plaintiff suffered from depressive disorder, NOS, and borderline personality. [Tr. 287]. He concluded that the Plaintiff experienced mild limitations with the ability to understand and remember; moderate limitations with the ability to socially interact; and moderate to marked limitations with the ability to concentrate, persist, and adapt. [Tr. 287].

8

At the hearing, the ALJ posed a hypothetical to the vocational expert, incorporating the residual functional capacity determination, see infra 2. [Tr. 38]. The vocational expert testified that based upon the hypothetical, such a person would not be able to perform the Plaintiff's past relevant jobs. [Tr. 38]. However, the vocational expert also testified that under the same hypothetical, there would be other jobs available, such as an assembler of electrical accessories, a wrapping machine tender, oil filter inspector, assembler of marking devices, and some jobs as a case packager. [Tr. 38-39]. In addition, the vocational expert testified there were approximately seven hundred jobs available within a seventy-five mile radius of Knoxville, Tennessee, and that there were approximately one million jobs available nationwide. [Tr. 49]. The vocational expert testified that he relied on the Dictionary of Occupational Titles and companion publications, census bureau information, and his experience in vocational rehabilitation, to form his opinions. [Tr. 39]. The ALJ then asked whether a person could still perform the jobs listed above if he or she displayed marked limitations with the ability concentrate, persist, and keep pace. [Tr. 40]. The ALJ testified, "I don't believe she would be able to function in a job. She wouldn't be able to keep pace with other workers." [Tr. 40]. The vocational expert also testified that if she had marked limitations in her ability to adapt, she would be precluded from performing the jobs listed above. [Tr. 40].

The ALJ discussed Dr. Kenney's assessment in detail. [Tr. 17-18]. The ALJ gave Dr. Kenney's opinion great weight, and the ALJ stated that he incorporated Dr. Kenney's opinion into the residual functional capacity determination. [Tr. 18]. The ALJ concluded that Dr. Kenney's opinions were consistent with the Plaintiff's examination. [Tr. 18]. In addition, the ALJ relied upon the vocational expert's testimony to show that there are a significant number of jobs available, despite the Plaintiff's limitations.

9

The Plaintiff argues that the ALJ gave Dr. Kenney's assessment great weight, but the residual functional capacity determination is inconsistent with his assessment. She asserts that Dr. Kenney's assessment equates to marked limitations with the ability to concentrate, persist, and adapt, which the vocational expert testified would preclude the Plaintiff from working. The Court finds the Plaintiff's argument unpersuasive.

The ALJ stated that he incorporated Dr. Kenney's assessment into the residual functional capacity determination. [Tr. 16]. Although the Plaintiff argues that Dr. Kenney's assessment with regard to the ability to concentrate, persist, and adapt, equates to marked limitations, the Court finds that it does not. Dr. Kenney's assessment specifically gives the Plaintiff "moderate-to-marked limitations," not simply marked limitations. [Tr. 287]. The Court recognizes that the Regulations define "marked" as "more than moderate but less than extreme." 20 C.F.R. Part 404, Subpart P., § 12.00D. However, if Dr. Kenney was using this precise definition, his conclusion that the Plaintiff had moderate-to-marked limitations would be illogical.

In any event, it is clear that the ALJ considered Dr. Kenney's limitations because the ALJ explicitly references Dr. Kenney's conclusions, and the ALJ describes his Dr. Kenney's notes throughout the decision. The ALJ found that the Plaintiff could perform only simple, non-detailed tasks; contact with coworkers and the public must be causal and infrequent; supervision must be direct and non-confrontational; and workplace changes infrequent and gradually introduced. [Tr. 15]. Ultimately, the residual functional capacity determination assigned to the Plaintiff was a decision reserved to the ALJ. 20 C.F.R. §§ 404.1546(c) and 416.946(c).

Furthermore, the ALJ looked at other evidence in determining the Plaintiff's residual functional capacity. The ALJ stated that the Plaintiff had no mental health treatment. [Tr. 18]. In addition, as the ALJ noted, there is very little evidence to support the Plaintiff's allegations.

Besides the consultative and non-examining doctors, the only other evidence in the file are two visits to the emergency room, in which the doctors did not find anything remarkable. On July 9, 2008, before her alleged onset date, the Plaintiff visited the emergency. [Tr. 205]. She stated that she felt like there was "a spider crawling in [her] head" and that she was confused. [Tr. 205, 217]. She reported that she had taken a Xanax, and her urine toxicology screen was positive for benzodiazepines. [Tr. 205, 208].[1] On examination, the doctor noted that she was alert; awake; oriented to time, place, and person; and experienced no apparent deficit. [Tr. 209]. Her principal diagnoses were migraine headaches, hypokalemia, and tobacco dependence. [Tr. 205]. The doctor noted that the plan was to discharge the Plaintiff on aspirin and gemfibrozil and to follow-up with primary care physician, but she left the hospital after being seen by the neurologist. [Tr. 206, 218].

In 2009, the Plaintiff went to the emergency room again. [Tr. 261]. She stated that she had "a sensation of her skin crawling at the back of her head" and some tingling in her left hand. [Tr. 261]. The Plaintiff was concerned that she was having a stroke. [Tr. 261]. The doctor noted that the Plaintiff was awake, alert, and cooperative with a calm affect. [Tr. 261]. She was speaking coherently, and she was oriented to person, place, and time. [Tr. 261]. The doctor performed a CT scan, which was negative for acute intracranial hemorrhage. [Tr. 263]. She was diagnosed with paresthesia. [Tr. 265]. She was told to continue aspirin and that she could choose whether she wanted a prescription for B6. [Tr. 266].

The ALJ also considered and placed some weight on the consultative psychologist's opinion, who opined that the Plaintiff was moderately impaired in some areas. [Tr. 288-90]. In addition, the ALJ found that the Plaintiff made inconsistent statements with regard to how many

---

[1] The Court is unsure when the Plaintiff took the Xanax. One medical note states that she took it the day before she was admitted, [Tr. 208], and another note states that she took it three days before she was admitted. [Tr. 217].

11

back surgeries she has had and whether she experiences anxiety attacks. Accordingly, the Court finds that substantial evidence supports the residual functional capacity determination.

The Plaintiff relies on a Ninth Circuit case to support her argument that a moderate-to-marked-limitation with the ability to concentrate precludes a person from working. However, the Court does not opine on whether a moderate-to-marked limitation precludes employment because the ALJ found only moderate limitations. In any event, in <u>Brinks v. Comm'r of Soc. Sec.</u>, the court addressed whether the hypothetical posed to the ALJ was incomplete. 343 F. App'x 211, 212 (9th Cir. Aug. 19, 2009). Here, the Plaintiff has not argued that the hypothetical question to the vocational expert was invalid. The Plaintiff only argues that the ALJ should have found marked limitations in certain areas, which according to the vocational expert's testimony, would have precluded the Plaintiff from working. "In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." <u>Griffeth v. Comm'r of Soc. Sec.</u>, 217 F. App'x 425, 429 (6th Cir. 2007) (citing <u>Casey v. Sec'y of HHS</u>, 987 F.2d 1230, 1235 (6th Cir. 1993)). The Plaintiff argues that a "moderate to marked" limitation is "effectively equal to a marked limitation based on the regulations." Quite simply it is not, and the Plaintiff cites no case law stating that is or should be so regarded. The Plaintiff was not found to have "marked limitations" but only "moderate to marked." The corollary to the Plaintiff's argument that this nomenclature means more than "moderate," is that it also means less than "marked." The ALJ's decision that the Plaintiff displayed moderate limitations, not marked, is supported with substantial evidence. Accordingly, the Court finds that the Plaintiff's argument is not well-taken.

12

## VI. CONCLUSION

The Court finds that the ALJ's decision is supported with substantial evidence. Therefore, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 15**] be **DENIED** and that the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **GRANTED.**

                      Respectfully submitted,

                      s/ C. Clifford Shirley, Jr.
                      United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).